NRP LLC I, Petitioner-Landlord-Appellant- Cross-Respondent, -
against
Elo Management LLC, Respondent-Tenant, -and- Ideal Entertainment, Inc. d/b/a Ideal Entertainment Group, et al., Respondents-Undertenants- Respondents, -and- Duke's Place, LLC d/b/a Duke's Place, et al., Respondents-Undertenants, -and- Jay Jay Cabaret, Inc., d/b/a Jay Jay Cabaret a/d/b/a Flash Dancers Worldwide Entertainment, Inc. a/k/a Worldwide Entertainment Enterprises, Inc., Respondent-Undertenant-Respondent- Cross-Appellant.



Petitioner-landlord appeals from an order of the Civil Court of the City of New York, New York County (Anthony Cannataro, J.), entered August 31, 2016, which denied its motion for summary judgment of possession against respondents-undertenants in a nonpayment summary proceeding and granted the cross motions of respondents-undertenants, with the [*2]exception of respondent-undertenant Jay Jay Cabaret, Inc., for summary judgment dismissing the petition as against them. Respondent-undertenant Jay Jay Cabaret, Inc., cross-appeals from so much of the same order as denied its cross motion for summary judgment dismissing the petition as against it.




Per Curiam. 
Order (Anthony Cannataro, J.), entered August 31, 2016, modified to deny respondents-undertenants' cross motions, reinstate the petition and grant petitioner-landlord's motion for summary judgment of possession as against all respondents-undertenants; as modified, order affirmed, with $10 costs. Execution of the warrant of eviction shall be stayed for 30 days from service of a copy of this order with notice of entry.
Pursuant to the terms of a December 1979 commercial lease agreement, respondent-tenant Elo Management LLC (Elo) became the net lessee of the building located at 1674 Broadway in Manhattan. The lease contained a mechanism, including arbitration, to set the rent of the net lessee after the initial 35-year term. Following an arbitration award that was confirmed by Supreme Court, Elo's yearly rent was increased from $241,999 to $3.15 million, commencing December 20, 2014. As a result, Elo was now obligated to pay landlord rent in an amount far greater than the amount of rent Elo collected from its subtenants. 
When Elo could not pay the increased rent, petitioner-landlord, the building owner, served a 10-day notice dated October 15, 2015, specifying that Elo owed rent arrears totaling approximately $2.7 million. Landlord then commenced this nonpayment proceeding against Elo; the nonpayment petition also named all of Elo's subtenants. Pursuant to a January 2016 so-ordered settlement stipulation between Elo and landlord, Elo consented to a final judgment of possession and the forthwith issuance of the warrant of eviction, execution thereof stayed through February 1, 2016.
Upon the remaining parties' respective cross motions for summary judgment, Civil Court dismissed the petition against all the undertenants, except for respondent Jay Jay Cabaret, Inc. (Jay Jay), concluding, inter alia, that Elo's voluntary surrender of possession did not affect the right of the subtenants to remain in possession.
We disagree and modify accordingly. The underlying settlement stipulation between Elo and landlord did not constitute a voluntary surrender agreement that would permit the subtenants to continue in possession (see generally Eten v Luyster, 60 NY 252, 259 [1875]; Goldcrest Transp. Ltd. v Across Am. Leasing Corp., 298 AD2d 494, 495 [2002] [where a landlord and prime tenant enter into an agreement to voluntarily terminate the paramount lease, the subtenant becomes the immediate tenant of the original lessor, and the interest of the subtenant and terms of the sublease continue as if no termination occurred]). To the contrary, the summary judgment record conclusively establishes that Elo's net lease was terminated by landlord based upon Elo's breach of the covenant to pay rent, pursuant to a stipulation entered into in the instant summary nonpayment proceeding against Elo, which proceeding arose because of the significant shortfall between the amount of rent Elo now owed landlord and the amount of rent Elo was entitled to receive from its subtenants. Accordingly, rather than a voluntary surrender by Elo, the net lease was terminated based upon Elo's breach (see 380 Yorktown Food Corp., v 380 Downing Dr., LLC, 107 AD3d 786 [2013], lv denied 22 NY3d 860 [2014] [sublease was properly terminated when the prime tenant breached the commercial overlease and stipulated that the lessor was [*3]entitled to possession]). In these circumstances, the termination of the net lease terminated the interests of each of the subtenants. A sublease is dependent upon and limited by the terms and conditions of the paramount lease from which it is carved, and a subtenancy is terminated by the expiration of the term of the prime tenant, or a re-entry by the landlord for a condition broken (Goldcrest Transp. Ltd. v Across Am. Leasing Corp., 298 AD2d at 496). 
The subtenants argue that, upon Elo's default, they became the direct tenants of landlord by operation of paragraph 28 of the net lease. This provision, titled "Contingent Assignment of Subleases," specifies that if the net lessee is in default in the payment of rent for 10 days after notice, the net lessee assigns all subleases and rents to landlord "until such default shall have been made good" or "cur[ed]." 
The subtenants' reliance upon paragraph 28 is misplaced, both because of the absence of privity, and the fact that the subtenants were not third party beneficiaries as landlord never undertook a duty toward them or intended to confer benefits on them (see Tamco Enters. v Mitsubishi Elec. Am., 190 AD2d 623 [1993], lv denied 82 NY2d 659 [1993]). In this regard, the subtenants were not parties to or named in the net lease, and their subleases were not yet in existence when the net lease was executed. In fact, any interpretation of paragraph 28 as creating tenancy rights for unnamed, future subtenants would be contrary to the reasonable expectation of the parties to the net lease and would, as a practical matter, eviscerate landlord's rights therein to increase the rent to market level and recover possession in the event of the net lessee's rent default, by binding the owner to subleases of the tenant. Since the subtenants did not enter into any non-disturbance agreements with landlord, the subtenants had no greater rights to possession than those possessed by the sublandlord/net lessee whose tenancy was terminated (see Millicom Inc. v Breed, Abbott & Morgan, 160 AD2d 496, 497 [1990], lv denied 76 NY2d 703 [1990]).
We also note that, by statute, the net lease, including paragraph 28 thereof, was cancelled upon the issuance of the warrant of eviction against the net lessee (see RPAPL § 749[3]) and there is no language in the net lease indicating that paragraph 28 or any assignment created thereunder was to survive the termination of the net lease (see e.g. Fisk Bldg. Assoc. LLC v Shimazaki II, Inc., 76 AD3d 468 [2010]).
Turning to the cross appeal, we reject respondent Jay Jay's claim that the net lease was subordinate to its tenancy. Jay Jay claims that its possession of the basement space was pursuant to an assignment of a certain 1974 "Latin World" lease which was not subordinate to the net lease. However, the documentary proof in the record establishes that a 1982 "First Amendment" extended the Latin World lease and specifically provided that said lease is a "sublease" and is "subject to all of the terms, covenants and conditions of the net lease."
We have examined the undertenants' remaining contentions and find them to be without merit.
THIS CONSTITUTES THE DECISION AND ORDER OF THE COURT.
I concur I concur I concur
Decision Date: July 06, 2017